1
2
3
4
5
6

Kiley L. Grombacher (State Bar No. 245960)
**BRADLEY/GROMBACHER LLP**
31365 Oak Crest Drive, Suite 240
Westlake Village, CA 91361
Telephone: 805-270-7100
Email: kgrombacher@bradleygrombacher.com

Attorney for Plaintiffs

7
8
9
10

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17
18
19

| | |
|---|---|
| **NICK MCKISSICK on behalf of A.M.;** **individually and on behalf of all others** **similarly situated,** | ) ) ) ) |
| **Plaintiff,** | ) ) |
| vs. | ) ) **CLASS ACTION COMPLAINT** |
| **BYTEDANCE, INC.; BYTEDANCE** **LTD.; TIKTOK LTD.; TIKTOK INC.;** **TIKTOK PTE. LTD.; AND TIKTOK** **U.S. DATA SECURITY, INC.,** | ) **JURY TRIAL DEMANDED** ) ) ) ) ) |
| **Defendants.** | ) ) ) |

20
21
22
23
24
25
26
27
28

Plaintiff NICK MCKISSICK on behalf of A.M. brings this Class Action Complaint against Defendants Bytedance, Inc.; Bytedance, Ltd.; TikTok, Ltd.; TikTok, Inc.; TikTok PTE. Ltd.; and TikTok U.S. Data Security, Inc. ("Defendants") as individuals and on behalf of all others similarly situated, and allege, upon personal knowledge as to Plaintiffs' own actions and to counsels' investigation, and upon information and belief as to all other matters, as follows:

**STATEMENT OF FACTS**

1.      Plaintiff brings this class action against Defendants for its failure disclose that it collects and sells personally identifiable information ("PII") of millions of minor children, without the consent of the minors or their parents, including, but not limited to: name, age, profile image, password, email, phone number, address, "approximate" location, social media account information, phone and social media contacts, messages sent to and received from other TikTok users, information in the clipboard of a user's device, and payment card numbers.

2.      Upon information and belief, Defendants collects and sells access to this personal data without the minors' or their parents' notice, knowledge, or consent.

**A.      The Children's Online Privacy Protection Act and the COPPA Rule Require That TikTok Provide Parental Notice and Gain Parental Consent Before Collecting or Using Children's Personal Information.**

3.      TikTok collects and uses these young children's Personal Information without providing direct notice to their parents or gaining their parents' verifiable consent, in violation of the Children's Online Privacy Protection Act of 1998 ("COPPA") and Children's Online Privacy Protection Rule ("Rule" or "COPPA Rule"), a federal statute and regulations that protect children's privacy and safety online. It also defies an order that this Court entered in 2019 to resolve a lawsuit in which the United States alleged that TikTok Inc.'s and TikTok Ltd.'s predecessor companies similarly violated COPPA and the COPPA Rule by allowing children to create and access accounts without their parents' knowledge or consent, collecting

CLASS ACTION COMPLAINT

data from those children, and failing to comply with parents' requests to delete their children's accounts and information.

4.    TikTok continues to violate COPPA. Last month, the Department of Justice filed a new lawsuit against TikTok for violating COPPA and illegally collecting and using young children's Personal Information. *See United States v. Bytedance, Ltd., et. al.* (Case No. 2:24-cv-06535-ODW-RAO) (C.D. Cal.) (Wright, J.).

5.    The COPPA Rule sets requirements for any "operator of a Web site or online service directed to children, or any operator that has actual knowledge that it is collecting or maintaining Personal Information from a child [under the age of 13]." Section 312.3 of COPPA Rule, 16 C.F.R. §§ 312.3.

6.    The COPPA Rule requirements apply to TikTok. TikTok is directed to children, and TikTok has actual knowledge that it is collecting Personal Information from children.

7.    The COPPA Rule has two requirements that are pertinent to this case: (1) parental notice and (2) parental consent.

8.    First, pursuant to the COPPA Rule, TikTok must provide direct notice to parents, notifying them of "what information it collects form children, how it uses such information and its disclosure practices for such information." 16 C.F.R. §§ 312.3(a); 312.4.

9.     Second, pursuant to the COPPA Rule, TikTok must "[o]btain verifiable parental consent prior to any collection, use, and/or disclosure of Personal Information from children." 16 C.F.R. §§ 312.3(b); 312.5.

10.     The COPPA Rule defines "Personal Information," as "[I]ndividually identifiable information about an individual collected online, including:

- A first and last name;

- A home or other physical address including street name and name of a city or town;

- Online contact information as defined in this section;

- A screen or user name where it functions in the same manner as online contact information, as defined in this section;

- A telephone number;

- A Social Security number;

- A persistent identifier that can be used to recognize a user over time and across different Web sites or online services. Such persistent identifier includes, but is not limited to, a customer number held in a cookie, an Internet Protocol (IP) address, a processor or device serial number, or unique device identifier;

- A photograph, video, or audio file where such file contains a child's image or voice;

- Geolocation information sufficient to identify street name and name of a city or town; or

- Information concerning the child or the parents of that child that the operator collects online from the child and combines with an identifier described in this definition."

Section 312.2 of COPPA Rule, 16 C.F.R. § 312.2.

11.    Plaintiff uses the same definition of "Personal Information" from Section 312.2 of the COPPA Rule for this Complaint.

12.    33. The COPPA Rule defines "Child" as "an individual under the age of 13." Section 312.2 of COPPA Rule, 16 C.F.R. § 312.2.

**B.    TikTok has Repeatedly and Persistently Violated COPPA and Otherwise Collected the Personal Information of Minors Without Notice to, Or Consent of, Parents.**

13.    TikTok's predecessor Musical.ly launched in 2014. Musical.ly was a social media platform where users could create and share short lip-sync videos.

14.    By 2016, New York Times tech reporter John Herrman wrote an article about the prevalence of young children on Musical.ly, explaining that "[w]hat is striking about the app, though, is how many of its users appear to be even younger than [13]."[1]

15.    Mr. Herrman wrote:

> The app does not collect or show the age of its users, but some of its top-ranked users, whose posts routinely collect millions of likes, called hearts, appear from their videos and profile photos to be in grade-school. Until recently, the app had a feature that suggested users to follow based on their location. In New York, that feature revealed a list composed largely not just of teenagers, but of children.[2]

16.    The CEO of a social media advertising agency told the New York Times that with Muscial.ly users, "you're talking about first, second, third grade."[3]

---

[1] Josh Herrman, Who's Too Young for an App? Musical.ly Tests the Limits, New York Times, Sept. 16, 2016, https://www.nytimes.com/2016/09/17/business/media/a-social-network-frequented-by-children-tests-the-limits-of-online-regulation.html.
[2] *Id.*
[3] *Id.*

17.    As Musical.ly was gaining popularity among elementary school kids in the United States, Beijing-based ByteDance Ltd. crated TikTok in 2017. On November 9, 2017, ByteDance Ltd. purchased Musical.ly for almost $1 billion. On August 2, 2018, TikTok merged with Muiscal.ly, consolidating the accounts and data into one application.

18.    In February 2019, the United States Department of Justice filed a complaint against TikTok's predecessors, Musical.ly and Musical.ly, Inc., alleging violations of the COPPA Rule and Section 5 of the FTC Act, 15 U.S.C. § 45.

19.    The Department of Justice alleged that TikTok's Musical.ly predecessors had collected and used Personal Information from children younger than 13 in violation of COPPA, including by (1) failing to directly notify parents of the information it collects online from children under 13 and how it uses such information and (2) failing to obtain verifiable parental consent before any collection or use of Personal Information from children under 13. *United States v. Musical.ly, et al.*, No. 2:19-cv-01439-ODW-RAO (C.D. Cal. Feb. 27, 2019) (Dkt. No. 1).

20.    In March 2019, the Honorable Otis D. Wright II entered a Stipulated Order for Civil Penalties, Permanent Injunction, and Other Relief against TikTok's predecessors. *Id.* at Dkt. No. 10 (2019 Permanent Injunction).

21.    As part of the 2019 Permanent Injunction, TikTok's predecessors were enjoined from violating the COPPA Rule, including by (1) "failing to make reasonable efforts, taking into account available technology, to ensure that a parent of

a child receives direct notice of Defendants' practices with regard to the collection, use, or disclosure of Personal Information from children" and (2) "failing to obtain verifiable parental consent before any collection, use, or disclosure of Personal Information from children." 2019 Permanent Injunction at 8.

22.    In 2019, Muiscal.ly was renamed TikTok Ltd., and Musical.ly Inc. was renamed TikTok Inc. This renaming did not change the companies' obligations under the 2019 Permanent Injunction.

**C.    Despite the Permanent Injunction, TikTok Collects and Uses Children's Personal Information Without Parental Notification or Consent.**

23.    Despite the 2019 Permanent Injunction, millions of American minor children, particularly those under the age of 13, continue to join TikTok. And, TikTok continues to collect and use their Personal Information.

24.    When users create a TikTok account, TikTok uses an "age gate" and requires that the user provide their birthday – the day, month, and year.

25.    Since at least March 2019, if a Child enters a birthday that indicates that they are 13 years old or over, then they are provided with a regular TikTok account.

26.    Since at least March 2019, if a Child enters a birthday that indicates that they are younger than 13 years old, then they are provided with a "TikTok For Younger Users" or "Kids Mode" account. TikTok does not notify parents or obtain parental consent for Kids Mode accounts.

27.    Children with Kids Mode accounts can view videos but cannot post videos.

28.    TikTok's "age gate" is insufficient. Other than asking for their birthday, TikTok makes no other attempt during the sign-in process to verify the user's age.

29.    TikTok and its employees have long known that children misrepresent their ages to pass through TikTok's age gate, and that despite other measures purportedly designed to remove children from the platform, children are ubiquitous on TikTok.

30.    TikTok's internal company data and documents classified 18 million of its 49 million daily users in the United States as being 14 years or younger.[4] That number is likely much higher given the inadequacies of TikTok's age gate.

31.    A former TikTok employee said that TikTok employees had pointed out videos from children who appeared to be younger than 13 that were allowed to remain online for weeks.[5]

32.    Defendants use human content moderators to review flagged accounts that potentially belong to children. In January 2020, for example, a TikTok moderator recognized that Defendants maintain accounts of children despite the "fact that we know the user is U13," *i.e.*, under the age of 13, so long as the child's profile does not admit that fact explicitly.

---

[4] Raymond Zhong & Sheera Frenkel, A Third of TikTok's U.S. Users May Be 14 or Under, Raising Safety Questions, New York Times, Aug. 14, 2020, https://www.nytimes.com/2020/08/14/technology/tiktok-underage-users-ftc.html.
[5] *Id.*

33.    Another employee admitted that TikTok moderators were required to ignore any "external information" indicating that a user under review is a child.

34.    As another example, in a July 2020 chat, one of Defendants' employees circulated the profiles of numerous underage users he had identified "literally through one minute of scanning," noting "[t]his is incredibly concerning and needs to be addressed immediately."

35.    TikTok utilizes internal algorithms to predict user's ages based on their online behavior. However, TikTok refuses to use its age-prediction algorithm to identify children under the age of 13 and stop them from using regular TikTok accounts.

36.    Furthermore, until at least May 2022, TikTok allowed consumers to avoid the age gate when creating a TikTok account by allowing consumers to use login credentials from certain third-party online services, including Instagram and Google. Children were permitted to create TikTok accounts without entering their birthday if they used login credentials from Google. However, Google allowed children under the age of 13 to create Google accounts with parental consent to use Google.

37.    Regardless of whether a Child uses a regular TikTok account or a Kids Mode account, TikTok violates the COPPA Rule by collecting and using their Personal Information without parental notice and consent.

38.    TikTok's insufficient age verification policies resulted in millions of Children gaining access to regular TikTok accounts and to the adult content and features of a regular TikTok account.

39.    For Children with regular TikTok accounts, TikTok collects Personal Information about them, including first and last name, age, email address, phone number, persistent identifiers for the device(s) used to access TikTok, social media account information, and profile image(s), as well as photographs, videos, and audio files containing the user's image and voice and the metadata associated with such media (such as when, where, and by whom the content was created), usage information, device information, location data, image and audio information, metadata, and data from cookies and similar technologies that track users across different websites and platforms.

40.    For Children with Kids Mode accounts, TikTok still collects Personal Information about them, including several types of persistent identifiers, including IP address and unique device identifiers. TikTok also collects app activity data, device information, mobile carrier information, and app information from Children using Kids Mode accounts—which it combines with persistent identifiers and uses to amass profiles on children.

41.    In August 2024, the Department of Justice filed a new complaint alleging that TikTok violated COPPA and the COPPA Rule, including by (1) knowingly creating accounts for children and collecting data from those children

without first notifying their parents and obtaining verifiable parental consent; (2) failing to honor parents' requests to delete their children's accounts and information; and (3) failing to delete the accounts and information of users it knows are children.

**D. TikTok Generates Revenue from Its Unlawful Conduct by Advertising to Children.**

42.    TikTok is a short-form video social media platform.

43.    In January 2024, TikTok reported that it had approximately 170 million monthly active users in the United States.

44.    TikTok earns a substantial amount of its revenue from advertising.

45.    TikTok reported that it earned $16 billion in revenue in the United States in 2023.

46.    TikTok uses the Personal Information collected from children (under the age of 13) to target them with advertising.

47.    TikTok targets users with specific advertisements by collecting persistent identifiers about the users and combining the identifiers with other information about the users.

48.    In other words, TikTok targets specific advertisements to children (under the age of 13) by violating COPPA. Thus, a substantial portion of the revenue that TikTok earns from advertisements that are served on children (under the age of 13) is a direct and proximate result of TikTok's violation of COPPA.

49.    TikTok's algorithm is trained on data collected from users via the TikTok platform and from third-party sources. Such data include videos viewed,

"liked," or shared, accounts followed, comments, content created, video captions, sounds, and hashtags, as well as device and account settings such as language preference, country setting, and device type.

50.    TikTok combines this collected data with children's persistent identifiers. The collected data is thus Personal Information. Section 312.2 of COPPA Rule, 16 C.F.R. § 312.2.

51.    TikTok also provides targeting options to advertisers that are based on this collected Personal Information.

52.    For example, for behavioral targeting, TikTok targets users based on their interactions with organic and paid content, including the types of videos the user viewed.

53.    For interest targeting, TikTok's algorithm analyzes users' long-term platform activities.

**E. Defendants Operate Under a Common Enterprise.**

54.    Defendants are a series of interconnected companies that operate the TikTok social media platform. Defendant ByteDance Ltd. is the parent and owner of Defendants ByteDance, Inc. and TikTok Ltd. TikTok Ltd. owns Defendants TikTok LLC and TikTok Pte. Ltd. TikTok LLC in turn owns Defendant TikTok Inc., which owns Defendant TikTok U.S. Data Security Inc.

55.    Upon information and belief, a group of ByteDance Ltd. and TikTok Inc. executives, including Zhang Yiming, Liang Rubo, Zhao Penyuan, and Zhu

Wenjia, direct and control TikTok's core features and development. Since 2019, ByteDance Ltd. and TikTok Inc. have promoted TikTok in the United States, spending hundreds of millions of dollars on advertising, employing U.S.-based staff and executives, and developing and distributing TikTok to run on Apple and Android devices.

56.    ByteDance Inc. and TikTok Inc. have responsibilities for developing, providing, and supporting TikTok in the United States.

57.    TikTok Pte. Ltd. serves as the U.S. distributor of TikTok through the Apple App Store and Google Play Store.

58.    TikTok Ltd. identifies itself as the developer of TikTok in the Apple App Store, and TikTok Pte. Ltd. identifies itself as the developer of TikTok in the Google Play Store. The tiktok.com domain is registered to TikTok Ltd.

59.    Beginning in 2023, TikTok Inc. transferred Personal Information of children to TikTok U.S. Data Security Inc., which has maintained that data without notice to those children's parents or parental consent.

60.    Defendants share officers and directors. For example, TikTok Inc.'s chief executive officers between 2020 and the present (Kevin Mayer, V Pappas, and Shou Zi Chew), have simultaneously held senior positions at ByteDance Ltd., and ByteDance Ltd.'s chief executive officers (Zhang Yiming and Liang Rubo) have simultaneously served as directors of TikTok Ltd. TikTok Inc.'s Global Chief Security Officer, Roland Cloutier, also served as cyber risk and data security support

for ByteDance Ltd. ByteDance Inc. and TikTok Pte. Ltd.'s officers and directors have also overlapped with each other, and with officers and directors of TikTok Inc. Defendants intertwine their finances; for example, ByteDance Ltd. provides compensation and benefits to TikTok Inc.'s CEO, and TikTok Inc. employees participate in ByteDance Ltd.'s stock option plan.

61.     Defendants have one centralized bank account for ByteDance Ltd.'s more than a dozen products, including TikTok. Defendants operate on a "shared services" model in which ByteDance Ltd. provides legal, safety, and privacy resources, including personnel. ByteDance's largest shareholder, Zhang Yiming, signed the 2019 consent order with the United States on behalf of Musical.ly, TikTok Ltd.'s predecessor company.

62.     Defendants have operated as a common enterprise while engaging in the unlawful acts and practices alleged below.

## JURISDICTION & VENUE

63.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C.§1332(d)(2), because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from each Defendants

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

64.    Defendant are each subject to personal jurisdiction in this district because they have substantial aggregate contacts throughout the United States and the state of California. Defendants have engaged, and continue to engage, in conduct that has a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, and the state of California, and this District, and it purposely availed itself of the laws of the United States and the State of California.

65.    Defendants are each subject to personal jurisdiction in this District because they purposely avail themselves of the privilege of conducting activities in the United States and the State of California and direct business activities toward consumers throughout the United States and the State of California. Furthermore, Defendants engaged and continue to engage in conduct that has a foreseeable, substantial effect throughout the United States, the State of California, and this District connected with its unlawful acts. Defendants operate as a common enterprise with Defendants TikTok Inc., TikTok U.S. Data Security Inc., and ByteDance, Inc. having principal places of business in California.

66.    Venue is proper in this District under 28 U.S.C §1391(b) because Plaintiff and thousands of potential Class Members reside in this District; Defendants transact business in this District; and Defendants intentionally avails itself of the laws within this District.

**PARTIES**

67.     **Plaintiff Nick McKissick** is the father of A.M., age 16, a minor who used the TikTok mobile application (hereinafter "TikTok").  Plaintiff McKissick is a citizen of the state of California.  At all relevant times, Plaintiff has been a resident of San Francisco, California.

68.     During the Class Period, A.M. created and used TikTok accounts (while under the age of 13) and viewed content on the TikTok platform.

69.     A.M. created a TikTok account at approximately 12 years old.

70.     During the Class Period, Defendants collected A.M..'s Personal Information for the purpose of tracking their activity and utilizing targeted advertisements.

71.     Defendants never obtained consent from nor notified A.M.'s parent and legal guardian, Plaintiff Nick McKissick, at any point prior to or during its collection and use of A.M.'s Personal Information.

72.     Defendants were bound by the 2019 Permanent Injunction that prohibited Defendants from collecting Personal Information from children under the age of 13, and therefore this conduct could not have reasonably been discovered earlier through investigation.

73.     **Defendant TikTok Inc**. is a California corporation with its principal place of business at 5800 Bristol Parkway, Suite 100, Culver City, California 90230.

TikTok Inc. transacts or has transacted business in this District and throughout the United States.

74.    **Defendant TikTok U.S. Data Security Inc.** is a Delaware corporation with its principal place of business shared with TikTok Inc. TikTok U.S. Data Security Inc. transacts or has transacted business in this District and throughout the United States.

75.    **Defendant ByteDance Ltd.** is a Cayman Islands company. It has had offices in the United States and in other countries. ByteDance Ltd. transacts or has transacted business in this District and throughout the United States.

76.    **Defendant ByteDance Inc**. is a Delaware corporation with its principal place of business at 250 Bryant Street, Mountain View, California, 94041. ByteDance Inc. transacts or has transacted business in this District and throughout the United States.

77.    **Defendant TikTok Pte. Ltd.** is a Singapore company with its principal place of business at 8 Marina View Level 43 Asia Square Tower 1, Singapore, 018960. TikTok Pte. Ltd. transacts or has transacted business in this District and throughout the United States.

78.    **Defendant TikTok Ltd.** is a Cayman Islands company with its principal place of business in Singapore or Beijing, China. TikTok Ltd. Transacts or has transacted business in this District and throughout the United States.

/ / /

## CLASS ALLEGATIONS

79.    Plaintiff brings this nationwide class action individually, and on behalf of all similarly situated individuals, pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

80.    The Classes that Plaintiff seeks to represent are defined as follows:

**Nationwide Class**

All United States residents (who were younger than 13 years old when they used TikTok) from whom Defendants collected and/or used Personal Information during the Class Period without notifying their parents and obtaining verifiable parental consent beforehand (the "Class").

**California Subclass**

All California residents (who were younger than 13 years old when they used TikTok) from whom Defendants collected and/or used Personal Information during the Class Period without notifying their parents and obtaining verifiable parental consent beforehand (the "California Subclass").

81.    Collectively, the Class and California Subclass are referred to as the "Classes" or "Class Members."

82.    Excluded from the Classes are the following individuals and/or entities: Defendants and Defendants' parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendants has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

83.     Plaintiff reserves the right to amend the definitions of the Classes or add a Class or Subclass if further information and discovery indicate that the definitions of the Classes should be narrowed, expanded, or otherwise modified.

84.     <u>Numerosity</u>: The members of the Classes are so numerous that joinder of all members is impracticable, if not completely impossible. The members of the Classes are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiffs at this time and such number is exclusively in the possession of Defendant, upon information and belief, millions of minor individuals are implicated.

85.     Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting solely individual members of the Classes. The questions of law and fact common to the Classes that predominate over questions which may affect individual Class Members, includes the following:

a.  Whether TikTok has or had a practice of collecting Personal Information from children who were younger than 13 years old without notifying their parents and obtaining verifiable parental consent beforehand;

b.  Whether TikTok has or had a practice of using Personal Information from children who were younger than 13 years old without notifying their parents and obtaining verifiable parental consent beforehand;

c.  Whether TikTok's practices violate the Children's Online Privacy Protection Act of 1998 ("COPPA") and the Children's Online Privacy Protection Rule ("COPPA Rule");

d.  Whether TikTok engaged in unlawful business practices;

e.  Whether TikTok engaged in unfair business practices;

f.  Whether TikTok has unjustly received and retained monetary benefits from Plaintiff's minor child and Class Members by profiting off the use of their Personal Information; and

g.  Whether Class Members are entitled to damages and/or restitution, and if so, the method of computing damages and/or restitution.

86.  <u>Typicality</u>: Plaintiff's claims are typical of those of the other members of the Classes because Plaintiff, like every other Class Member, was exposed to virtually identical conduct and now suffers from the same violations of the law as each other member of the Classes.

87.  <u>Policies Generally Applicable to the Class</u>: This class action is also appropriate for certification because Defendants acted or refused to act on grounds generally applicable to the Classes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Classes as a whole. Defendants' policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenges of these policies hinges on Defendants' conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff.

88.  <u>Adequacy</u>: Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that Plaintiff has no disabling conflicts of interest that would be antagonistic to those of the other Class Members. Plaintiff seeks no relief that is antagonistic or adverse to the Class Members and the infringement of the rights and the damages suffered are typical of other Class Members. Plaintiff has retained counsel experienced in complex class action and data breach litigation, and

Plaintiff intends to prosecute this action vigorously.

89.    <u>Superiority and Manageability</u>: The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendants. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

90.    The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief for the wrongs alleged because Defendants would necessarily gain an unconscionable advantage since Defendants would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Classes and will establish the right of each Class Member to recover on the

cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

91.     The litigation of the claims brought herein is manageable. Defendants' uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

92.     Adequate notice can be given to Class Members directly using information maintained in Defendants' records.

93.     Unless a Class-wide injunction is issued, Defendants may continue to act unlawfully as set forth in this Complaint.

94.     Further, Defendants have acted on grounds that apply generally to the Classes as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class- wide basis.

## CAUSES OF ACTION

### COUNT I
### UNJUST ENRICHMENT
**(On behalf of Plaintiff and the Classes v. All Defendants)**

95.     Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

96.     By obtaining and reselling Plaintiff's and Class Members' PII, Defendants received a monetary benefit. Defendants knew that it could sell the PII for financial gain and has retained that benefit.

97.     Defendants have unjustly received and retained monetary benefits from Plaintiff's minor child and Class Members by profiting off the use of their Personal Information under unjust circumstances such that inequity has resulted.

98.     Defendants have knowingly obtained benefits from Plaintiff's minor child and Class Members as alleged herein under circumstances such that it would be inequitable and unjust for TikTok to retain them.

99.     Defendants have been knowingly enriched by revenues and profits it received from unjustly and illegally collecting and using the Personal Information of children under the age of 13 to build profiles and target advertisements to those children.

100.    Defendants have failed to obtain legally valid consent from Plaintiff's minor child and Class Members to collect and use their Personal Information.

101.    Defendants will be unjustly enriched if they are permitted to retain the benefits derived from the illegal collection and usage of Plaintiff' minor child and Class Members' Personal Information.

102.    Plaintiff's minor child and Class Members are therefore entitled to relief, including disgorgement of all revenues and profits that TikTok earned as a result of its unlawful and wrongful conduct.

**COUNT II**
**INVASION OF PRIVACY, INTRUSION UPON SECLUSION**
**(On Behalf of Plaintiff and the Classes Members v. All Defendants)**

103.    Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

104.    As minor children, Plaintiff's minor child and Class Members had a legitimate expectation of privacy in their personally identifying information. The PII of Plaintiff's minor child and Class Members are a private matter. Plaintiff and Class Members were entitled to the protection of this information.

105.    Defendants owed a duty to Plaintiff and Class Members to keep their PII confidential. Defendants had actual knowledge that they were obtaining, collecting, and using the personally identifying information of Plaintiff and Class Members.

106.    Plaintiff and Class Members had an objectively reasonable expectation that their personally identifying information would be protected and would remain private.

107.    Defendant—intentionally and with reckless disregard for Plaintiff's and Class Members' privacy—obtained, collected, used, and/or shared Plaintiff's and Class Members' personally identifying information, and did so in a manner that would be highly offensive to a reasonable person.

108.    Defendants acted with such intention and/or reckless disregard as to the safety of Plaintiff's and Class Members' PII to rise to the level of intentionally engaging in intrusion upon the seclusion of Plaintiff and Class Members.

109.    Plaintiff and Class Members have been damaged by the invasion of their privacy via intrusion upon seclusion in an amount to be determined at trial.

/ / /

/ / /

1
2

**COUNT III**
**INVASION OF PRIVACY, PUBLIC DISCLOSURE OF PRIVATE FACTS**
**(On Behalf of Plaintiff and the Classes Members v. All Defendants)**

3

110.    Plaintiff re-alleges and incorporates by reference all the allegations

4
5

contained in the foregoing paragraphs as if fully set forth herein.

6

111.    As minor children, Plaintiff's minor child and Class Members had a

7

legitimate expectation of privacy in their personally identifying information. The PII

8
9

of Plaintiff's minor child and Class Members are a private matter. Plaintiff and Class

10

Members were entitled to the protection of this information from disclosure to

11

unauthorized third parties.

12
13

112.    Defendants owed a duty to Plaintiff and Class Members to keep their PII

14

confidential.

15

113.    Plaintiff and Class Members had an objectively reasonable expectation

16
17

that their personally identifying information would be protected and would remain

18

private.

19

114.    Defendants permitted the public disclosure of Plaintiff's minor child's

20
21

and Class Members' PII to unauthorized third parties.

22

115.    The PII that was collected and disclosed without the Plaintiff's and Class

23

Members' authorization was highly sensitive, private, and confidential. The public

24
25

disclosure of the type of PII at issue here would be highly offensive to a reasonable

26

person of ordinary sensibilities.

27

116.    By permitting the unauthorized collection and disclosure, Defendants

28

acted with reckless disregard for the Plaintiff's and Class Members' privacy, and

with knowledge that such disclosure would be highly offensive to a reasonable person. Furthermore, the disclosure of the PII at issue was not newsworthy or of any service to the public interest.

117.    Defendants acted with such intention and/or reckless disregard as to the safety of Plaintiff's and Class Members' PII to rise to the level of intentionally engaging in the public disclosure of private facts of Plaintiff and Class Members.

118.    Plaintiff and Class Members have been damaged by the invasion of their privacy via public disclosure of private facts in an amount to be determined at trial.

## **COUNT IV**

**California's Invasion of Privacy Act ("CIPA"), Cal. Pen. Code §§ 630, et seq**
**(On Behalf of Plaintiff and the California Subclass Members v. All Defendants)**

119.    Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

120.    Defendants' acts and practices complained of herein, engaged in for purpose of storing and tracking indefinitely the information of minor children, including, but not limited to: name, age, profile image, password, email, phone number, address, "approximate" location, social media account information, phone and social media contacts, messages sent to and received from other TikTok users, information in the clipboard of a user's device, and payment card numbers, without their consent or the consent of their parents or guardians, violated and continues to violate Cal. Pen. Code § 637.7.

/ / /

121.   Cal. Pen. Code § 637.7(a) prohibits, among other things, the use of an electronic tracking device to determine the location or movement of a person. As used in Cal. Pen. Code § 637.7, "electronic tracking device" means "any device attached to a vehicle or other movable thing that reveals its location or movement by the transmission of electronic signals." Cal. Pen. Code § 637.7(d).

122.   Cal. Pen. Code § 637.7(a) also prohibits, among other things, "willfully and without the consent of all parties to the communication, or in any unauthorized manner," reading, or attempting to read, or learning the contents or meaning of, any message.

123.   In direct violation of this prohibition, and without the consent of Plaintiff or the California Subclass Members, Defendants continued to record, store, and use the location and movement of Plaintiff's minor child's and Class Members' electronic devices and provide that information to third parties.

124.   Also in direct violation of this prohibition, and without the consent of Plaintiff or the California Subclass Members, Defendants continued to record, store, and use the messages sent to and received from Plaintiff's minor child's and Class Members' electronic devices and provide that information to third parties.

125.   As a result of Defendants' violations of Cal. Pen. Code § 637.7, and pursuant to Cal. Pen. Code § 637.2, Plaintiff and Class Members are entitled to the following relief:

126.   A declaration that Defendants' conduct violates CIPA;

127. Statutory damages and/or trebled actual damages;

128. Injunctive relief in the form of, inter alia, an order enjoining Defendants from collecting, storing, and transmitting data of Class Members to third parties in violation of CIPA;

129. Injunctive relief in the form of, inter alia, an order requiring Defendants to destroy all data created or otherwise obtained from Class Members; and;

130. An award of attorneys' fees and costs of litigation as provided by CIPA, the private attorney general doctrine existing at common law and also codified at California Civil Code Section 1021.5, and all other applicable laws.

## COUNT V
### California's Constitutional Right to Privacy
### (Plaintiff and the California Subclass Members v. All Defendants)

131. Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

132. Plaintiff and the California Subclass Members have reasonable expectations of privacy in the personal affairs of minor children.

133. Defendants intentionally intruded on and into Plaintiff's and California Subclass Members' solitude, seclusion, right of privacy, or private affairs by intentionally collecting data from their minor children without the consent of the children or their parents or guardians.

134. These intrusions are highly offensive to a reasonable person, because they disclosed sensitive and confidential location information, constituting an

egregious breach of social norms. This is evidenced by, inter alia, Supreme Cour

precedent, legislation enacted by Congress and the California legislature, rules

promulgated and enforcement actions undertaken by the FTC, petitions and litigation

initiated in the United States and abroad, and Defendants' own statements.

135.   Plaintiff and the California Subclass Members were harmed by the

intrusion into their private affairs as detailed throughout this Complaint.

136.   Defendants' actions and conduct complained of herein were a substantial

factor in causing the harm suffered by Plaintiff and California Subclass Members.

137.   As a result of Defendants' actions, Plaintiff and California Subclass

Members seek damages and punitive damages in an amount to be determined at trial.

Plaintiff and California Subclass Members seek punitive damages because

Defendants' actions—which were malicious, oppressive, and willful—were

calculated to injure Plaintiff and California Subclass Members and were made in

conscious disregard of Plaintiff's and California Subclass Members' rights.

138.   Punitive damages are warranted to deter Defendants from engaging in

future misconduct.

## COUNT VI
**California's Unfair Competition Law ("UCL"), California Business &
Professions Code § 17200, et seq.
(Plaintiff and the California Subclass Members v. All Defendants)**

139.   Plaintiff re-alleges and incorporates by reference all the allegations

contained in the foregoing paragraphs as if fully set forth herein.

140.    Plaintiff's minor child and members of the California Subclass are residents of California and used TikTok in California while under the age of 13.

141.    At all times mentioned herein, Defendants each engaged in "trade" or "commerce" in California in that they each engaged in the advertising, offering for sale, sale, and distribution of property or any other articles, commodities, or things of value in California.

142.    Defendants each engaged in consumer-oriented acts through the offering, promotion, and/or distribution of the TikTok, which significantly impacted the public because TikTok is used  nationwide, including in California, and there are millions of users, including Plaintiff's minor child and members of the California Class.

143.    Cal. Bus. & Prof. Code § 17200, et seq. (the "UCL") broadly prohibits "unfair competition", which the UCL defines as including "any unlawful, unfair or fraudulent business act or practice and  unfair, deceptive, untrue or misleading advertising[.]" California courts have noted that "the differences [between the UCL and FTC Act] are not of a  degree to impair comparison" and that unfair acts respectively proscribed in the two statutes  "appear practically synonymous." *People ex rel. Mosk v. Nat'l Rsch. Co. of Cal.*, 201 Cal. App. 2d 765, 773, 20 Cal. Rptr. 516, 521 (Ct. App. 1962). As a result, California courts deem "decisions of  the federal court [construing the FTC Act] are more than ordinarily persuasive." *Id*.

144.  Defendants violated Cal. Bus. & Prof. Code § 17200, et seq. by engaging in the unfair acts or practices proscribed by Cal. Bus. & Prof. Code § 17200, et seq. outlined herein.

145.  The UCL prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising. In the course of conducting business, Defendants committed "unlawful" business practices by, among other things, making the representations and omissions of material facts, as set forth more fully herein, and violating Civil Code §§ 1572, 1573, 1709, 1711, 1770(a)(5), (6), (7), (9), and (16), and Business & Professions Code §§ 17200, et seq., 17500, et seq., and the common law.

146.  Plaintiff alleges violations of consumer protection, unfair competition, and truth in advertising laws in California, resulting in harm to consumers. Defendants' acts and omissions also violate and offend the public policy against engaging in false and misleading advertising, unfair competition, and deceptive conduct towards consumers. This conduct constitutes violations of the UCL's "unfair" prong. There were reasonably available alternatives to further Defendants' legitimate business interests other than the conduct described herein.

147.  As set forth above, Defendants at all times had actual knowledge of their own noncompliance with COPPA and other applicable privacy-related laws. Further, Defendants at all times had actual knowledge of their collection of the Personal Information of Plaintiffs and California Subclass members and the tracking, profiling,

and targeting of those children for lucrative behavioral advertising.

148.   As set forth above, Defendants intentionally designed TikTok to, among other things, attract minor children by making child-directed content available to them so that TikTok could collect the Personal Information for substantial commercial gain.

149.   Defendants have engaged, and continue to engage, in conduct that is likely to deceive members of the public. This conduct includes failing to disclose that Defendants were collecting and disseminating the private information of minors without parental notice or consent.

150.   This information is important to consumers, including Plaintiffs, because disclosure of PII creates a substantial risk of future identity theft, fraud, or other forms of exploitation.

151.   TikTok was aware at all times that a significant portion of its users were under the age of 13 and nonetheless collected the Personal Information of those children for the purpose of serving those children behavioral advertising for substantial commercial gain. After entering into a Permanent Injunction with the United States in 2019 intended to prohibit Defendants from their continued collection or use of the Personal Information of children under the age of 13, Defendants purposefully sought to undermine their compliance through, among other practices, implementation of a woefully inadequate age-gating system, and monitoring policies and procedures designed to allow them to continue knowingly collecting and using

the Personal Information of children.

152.    Defendants have engaged in unconscionable, deceptive, or unfair acts or practices, which constitute unfair competition.

153.    Defendants systematically collected, used, and/or disclosed Personal Information from children under 13 in violation of COPPA, and therefore the FTC Act, by:

- Failing to provide sufficient notice of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(d) of COPPA, 16 C.F.R. § 312.4(d);

- Failing to provide direct notice to parents of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(b) and (c) of COPPA, 16 C.F.R. § 312.4(b)-(c);

- Failing to obtain verifiable parental consent before any collection or use of Personal Information from children under 13, in violation of Section 312.5 of COPPA, 16 C.F.R. § 312.5; and

- Failing to establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of Personal Information collected from children under 13, in violation of Section 312.8 of COPPA, 16 C.F.R. § 312.8.

154.    Violations of COPPA and the accompanying FTC regulations "shall be treated as a violation of a rule defining an unfair … act or practice prescribed under 15 U.S.C. § 57a(a)(1)(B)." 15 U.S.C. § 6502(c). These rules define unfair acts or practices in or affecting commerce within the meaning of 15 U.S.C. § 45(a)(1), which

is the model for the various consumer protection statutes in the several states, including the Cal. Bus. & Prof. Code § 17200, *et seq.*[6]

155.   Accordingly, Defendants engaged in unfair and unlawful trade acts or practices in violation of Cal. Bus. & Prof. Code § 17200, et seq., which is modeled after, proscribes the same conduct as, and gives deference to the definitions of the FTC Act.

156.   Defendants' conduct is unfair, immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers, and there are no greater countervailing benefits to consumers or competition.

157.   Plaintiff and members of the California Subclass could not have reasonably avoided injury because Defendants each took advantage of the lack of knowledge, ability, experience, and/or capacity of consumers—in this case children under 13—to their detriment.

158.   Consumers like Plaintiffs and the California Subclass did not that they were giving their PII to Defendants or that Defendants were failing to safeguard such PII.

159.   Defendants willfully engaged in the unfair and unlawful acts described herein and knew or recklessly disregarded the fact that they violated the Cal. Bus. & Prof. Code § 17200, *et. seq*.

---

[6] See 16 C.F.R. § 312.1 (COPPA "prohibits unfair or deceptive acts or practices in connection with the collection, use, and/or disclosure or Personal Information from and about children on the internet.").

160.   Plaintiffs and members of the California Subclass were harmed by Defendants' practices described herein, which were a substantial factor and caused injury in fact and actual damages to Plaintiffs and members of the California Subclass.

161.   As a direct and proximate result of Defendants' unfair and unlawful acts and practices in violation of the Cal. Bus. & Prof. Code § 17200, *et seq*., Plaintiff and members of the California Subclass have suffered and will continue to suffer an ascertainable loss of money or property, real or personal, and monetary and non-monetary damages, as described herein, including, inter alia, the loss of the value and/or diminishment in value of their Personal Information and the loss of the ability to control the use of their Personal Information, which allowed Defendants to profit at the expense of Plaintiff and members of the California Subclass. Such an injury is not outweighed by any countervailing benefits to consumers or to competition.

162.   Because Defendants' misconduct is ongoing and continuing, prospective injunctive relief is necessary.  Absent injunctive relief, Defendants may continue to collect consumers' PII while failing to adequately safeguard such PII.

163.   As outlined herein, there is tangible value in Plaintiff and members of the California Subclass's Personal Information. Plaintiffs and members of the California Subclass have lost the opportunity to receive value in exchange for their Personal Information.

164.   Defendants' monetization of Plaintiff's minor child's and members of the California Subclass's Personal Information demonstrates that there is a market for their Personal Information.

165.   Plaintiffs' and members of the California Subclass's Personal Information is now in the possession of Defendants, who have used and will use it for their financial gain.

166.   Defendants' retention of Plaintiffs' and members of the California Subclass's Personal Information presents a continuing risk to them as well as the general public. Plaintiffs and members of the California Subclass seek relief for the injuries they have suffered as a result of Defendants' unfair and unlawful acts and practices, as provided by Cal. Bus. & Prof. Code § 17200, et seq. and applicable law, including all actual damages and attorneys' fees and costs, treble damages, statutory damages, and restitution, as well as an injunction requiring Defendants to each permanently delete, destroy or otherwise sequester the Personal Information collected without parental consent, requiring Defendants to provide a complete audit and accounting of the uses of the Personal Information by them and any other third parties, and other appropriate injunctive and/or declaratory relief.

167.   Unless restrained and enjoined, Defendants will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate.

168.   Plaintiff, on behalf of himself and all others similarly situated, seeks restitution from Defendants of all money obtained from Plaintiff and the other

members of the California Subclass collected as a result of unfair competition, an injunction prohibiting Defendants from continuing such practices, corrective advertising, and all other relief this Court deems appropriate, consistent with California Business & Professions Code § 17203.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the other members of the Classes alleged herein, respectfully requests that the Court enter judgment as follows:

A.    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as the representatives for the Classes and counsel for Plaintiffs as Class Counsel;

B.    For an order declaring the Defendants' conduct violates the statues and causes of action referenced herein;

C.    For an order finding in favor of Plaintiffs and Class Members on all counts asserted herein;

D.    Ordering Defendants to pay for lifetime credit monitoring and dark web scanning services for Plaintiffs and the Classes;

E.    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

F.    For prejudgment interest on all amounts awarded;

G.    For an order of restitution and all other forms of equitable monetary relief requiring the disgorgement of the revenues wrongfully retained as a result of the Defendants' conduct;

H.    For injunctive relief as pleaded or as the Court may deem proper; and

I.    For an order awarding Plaintiffs and Class Members their reasonable attorneys' fees and expenses and costs of suit, and any other expense, including expert witness fees; and

J.    Such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all claims in this Complaint and of all issues in this action so triable as of right.

DATED: November 15, 2024

Respectfully submitted by:


By:  /s/Kiley Grombacher
KILEY GROMBACHER
State Bar No. 245960
Bradley Grombacher LLP
31365 Oak Creek Drive, Suite 240
Westlake Village, CA 91361
Telephone: 805-270-7100
Email: kgrombacher@bradleygrombacher.com

Attorney for Plaintiffs